## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| PETER THOMPSON, et al., | Cause No. CV 2:24-00028-BMM |
| Plaintiff, | |
| vs. | **ORDER** |
| STATE OF MONTANA, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Peter Thompson filed a Complaint and Amended Complaint and named numerous Defendants, including, among others, the State of Montana, Governor Greg Gianforte, U. S. Bank, the City of Bozeman, Montana, and its City Commissioner, Auction.com LLC, and CB Properties LLC.  (Doc. 1; Doc. 7.) Defendant U.S. Bank moved to dismiss Thompson's Amended Complaint and to deem him a vexatious litigant.  (Doc. 21; Doc. 30.)  The Court will grant both motions.

### I.  STATEMENT OF THE CASE

#### A. Parties and Procedural Background

Plaintiffs Peter Thompson, Nokolais Thompson, and Cattail Creek Subdivision – Phase II (collectively, "Thompson") filed a Complaint (Doc. 1) and

1

an Amended Complaint (Doc. 7).  Defendant Jason J. Henderson filed a motion to dismiss for failure to state a claim.  (Doc. 16.)  Thompson voluntarily dismissed Henderson as a party, along with all Defendants except for CB Properties LLC, Bozeman City Commissioner Jennifer Madgic, U.S. Bank, At Your Service Cleaning & HOA Management Inc., Auction.com LLC, and Governor Greg Gianforte.  (Doc. 20.)  Defendant U.S. Bank moved to dismiss Thompson's claims (Doc. 21) and to deem Thompson a vexatious litigant (Doc. 30).

Thompson filed a Notice of Lis Pendens (Doc. 3; Doc. 4) and a Motion for Random Assignment Pursuant to Standing Order No. BMM-32 (Doc. 8).  Magistrate Judge John Johnston denied Thompson's motion for random assignment because standing order BMM-32 is no longer in effect.  (Doc. 15.)  Thompson moved again for random reassignment under Local Rule 1.2.  (Doc. 18.)  Thompson's case was reassigned to this Court.  (Doc. 36.)  Thompson moved for the Court's recusal because "Judge Morris's past employment for the State of Montana establishes that he has been a material witness regarding the immediate allegations in support of injunctive relief against the State of Montana."  (Doc. 39.)  Thompson moved to strike Defendant U.S. Bank's motions and responses and argued that U.S. Bank did not comply with local rules regarding citations.  (Doc. 55.)  The Court denied these motions.  (Doc. 69.)

Thompson did not respond to U.S. Bank's motion to dismiss and requests for

judicial notice. Thompson instead filed another motion to strike, arguing that U.S. Bank's motion to dismiss was untimely. (Doc. 40.) U.S. Bank responded (Doc. 48), and Thompson replied (Doc. 53). Thompson moved for entry of default against Defendants Jennifer Madgic, U.S. Bank, Auction.com LLC, CB Properties LLC, At Your Service Cleaning & HOA Management Inc, and Governor Greg Gianforte. (Doc. 45.) Thompson also included Andy Cecere, who has not been named as a Defendant, and the City of Bozeman, which has been voluntarily dismissed. (Doc. 7; Doc. 20.) U.S. Bank responded (Doc. 49.), and Thompson replied (Doc. 52). Thompson filed "Final Proofs of Service and Proof on Notice of Complaint delivered." (Doc. 51.) Thompson then filed separate motions for default judgment against Defendants Auction.com (Doc. 57), At Your Service Cleaning & HOA Management Inc. (Doc. 59), CB Properties (Doc. 61), Jennifer Madgic (Doc. 63), Governor Greg Gianforte (Doc. 65), and the State of Montana (Doc. 67).

Thompson filed a Notice of Appeal regarding the Court's denial of Thompson's motion for random assignment and motion for recusal. (Doc. 54.) Thompson petitioned the Ninth Circuit for a writ of mandamus to force the Court to enter default against Defendants and to include the Court's March 21, 2025 Order in Thompson's pending appeal. (Doc. 71; Doc. 76.) The Ninth Circuit dismissed Thompson's appeal and denied all other pending motions as moot. (Doc. 82.)

The Court conducted a hearing on March 24, 2025. (Doc. 72.) The Court

3

granted Thompson additional time to respond to U.S. Bank's motion to deem him a vexatious litigant, and Thompson filed a response. (Doc. 75.) U.S. Bank replied (Doc. 77.) Thompson moved this Court to certify its March 21, 2025 Order for appeal "as a final judgment under Federal Rule of Civil Procedure 54(b)" and moved to certify for interlocutory appeal the Clerk of Court's "de facto" denial of his motions for default judgment. (Doc. 83; Doc. 85.) U.S. Bank opposed (Doc. 87), and Thompson replied (Doc. 89).

## B. Factual Background

Thompson alleges a complex conspiracy between U.S. Bank and other Defendants related to the purchase, financing, zoning, and the HOA governance of Thompson's 0.24-acre property located at 2988 Blackbird Drive in Bozeman, Montana (the "Property"). (Doc. 7.) Defendant U.S. Bank moved to dismiss Thompson's claims because Thompson seeks to relitigate claims already adjudicated in two previous lawsuits based on the same set of facts. (Doc. 21; Doc. 22.)

### 1. Thompson's Allegations

Thompson's Amended Complaint alleges the following facts. Thompson relocated to Bozeman and purchased the Property in February 2008. (Doc. 7, ¶ 3.) Thompson learned that the Property's zoning did not permit apartments in January 2008. (*Id.*, ¶¶ 192–93.) Thompson nonetheless applied for a loan from U.S. Bank and received a construction loan to build a home and "in-law apartment" on the

Property.  (*Id.*, ¶ 194.)  U.S. Bank approved Thompson's application for a "30-year fixed-rate new construction loan" for which a fixed rate of interest applied to the "long-term payments," but a variable rate applied during a one-year period of construction on the Property.  (*Id.*, ¶¶ 219, 222.)  Thompson alleges that U.S. Bank informed him that the terms of the loan "allowed for as many extensions of time [for the construction period] as [Thompson] might need, simply by filling out some paperwork and paying a fee."  (*Id.*, ¶ 223.)

Thompson alleges that the final loan documents "were a deceptive loan application package that did not include the long-term fixed rate rider that US Bank had presented and explained to him during their previous meeting."  (*Id.*, ¶ 228.)  The final documents did not contain an "associated loan application number" so that U.S. Bank could "trick [Thompson] into signing up for a long-term variable rate construction loan instead of the 30-year fixed rate loan[.]"  (*Id.*, ¶¶ 230, 238.)  When Thompson's payments increased to include principal and interest, Thompson began working on other projects to afford the payments, which delayed his construction efforts on the Property.  (*Id.*, ¶ 242.)

Thompson applied for a modification to his loan in 2016 pursuant to the Home Affordable Modification Program ("HAMP").  (*Id.*, ¶ 244.)  U.S. Bank notified Thompson that the loan could not be refinanced through HAMP because "the construction loan package was not federally funded."  (*Id.*)  Thompson defaulted on

the loan in 2020.  (*Id.*, ¶ 245.)  A "consortium of defendants . . . conspired" to carry out a "non-judicial foreclosure auction" of the Property in 2023.  (*Id.*, ¶¶ 255–56.) Thompson attempted to stop the auction by serving U.S. Bank with "notice of complaint, self-authenticating copies of the notice of lis pendens, a motion for a restraining order to halt the non-judicial auction, and a notice of hearing regarding the motion to stop the non-judicial auction."  (*Id.*, ¶ 256.)  Thompson alleges that Defendants misrepresented the Property's value in advertising before the auction. (*Id.*, ¶ 264.)

Thompson also alleges that U.S. Bank conspired with other Defendants in the "rezoning" of the Property.  Thompson alleges that a former City Commissioner encouraged U.S. Bank to conceal evidence of a canceled check that would "substantiate his payment to the GIS office" for a new address that was zoned for a multiple dwelling unit.  (*Id.*, ¶¶ 164, 61.)  A U.S. Bank employee and a title insurer "purged [ ] all evidence that the encumbrance of title documents at the time of closing" showing the Property as an "R2" zone.  (*Id.*, ¶ 61.)

### 2. Thompson's Prior Cases

This case represents Thompson's third in this Court regarding the Property. Thompson filed his first lawsuit on November 30, 2018, *Thompson v. Sullivan et al.*, Case No. 2:18-cv-00075-BMM. ("*Thompson I*").  (Doc. 32 at 307.)  Thompson sued numerous Defendants, including U.S. Bank and its employees, the City of Bozeman,

Bozeman city employees, police officers, and attorneys, Montana Secretary of State Corey Stapleton, the title company, the HOA and related entities, and others, in a 120-page Complaint. (*Id.* at 307–10.) *Thompson I* alleged that the Property was "rezoned" without Thompson's knowledge, that as a result, Thompson could not build the planned in-law apartment on the Property, and that Thompson could not complete construction on the Property. (*Id.* at 312–14.) Thompson moved for additional time to file an Amended Complaint to clarify his claims and effectuate service on the appropriate parties. (Doc. 32 at 428.) Thompson instead filed an Amended Complaint, affidavit, and exhibits, totaling 270 pages against 50 new Defendants. (Doc. 32 at 33–302.)

The Amended Complaint similarly alleged a conspiracy among Defendants to prevent Thompson from developing the Property. (*Id.*) Thompson alleged in his Amended Complaint that the loan from U.S. Bank originally provided for extensions on the construction phase of the project and the associated interest rate. (*Thompson I*, Doc. 9, ¶¶ 205–09.) U.S. Bank denied Thompson's request to fix the interest rate of the construction loan and make payments only on the interest, which prevented Thompson from continuing construction efforts on the home. (*Id.*, ¶¶ 226, 228, 236–38.) Thompson's Amended Complaint added allegations that a U.S. Bank employee failed to obtain documentation related to the canceled check that supported Thompson's application for an address in a particular zone. (*Id.*, ¶¶ 147–48.)

7

The Court granted in part U.S. Bank's motion to dismiss. (Doc. 32 at 435–47.) The Court ordered Thompson to file an amended complaint providing a more definite statement of no more than twenty pages in length addressing all remaining defendants, including US Bank, and curing any other deficiencies noted in the Findings and Recommendations. (Doc. 32 at 451.) Thompson instead filed a 43-page Amended Complaint and added 14 new Defendants. (Doc. 32 at 453–95.) Defendants moved to strike the Amended Complaint for failure to comply with the Court's order. (Doc. 32 at 497–516.) Thompson filed numerous motions, including an "Objection to Conflict of Interest between City Defendants and their Counsel" (Doc. 32 at 518–21); a motion requesting reconsideration of the Court's denial of a motion for an extension of time (Doc. 32 at 523–45); an objection to the Court's denial of his motion for reconsideration (Doc. 32 at 547–57); a motion for recusal of HOA Defendant's counsel spanning 380 pages with Thompson's affidavit and exhibits (Doc. 32 at 559–943); a Motion for Declaratory Judgment repeating arguments regarding the illegal formation of the HOA (Doc. 32 at 945–75); a "Motion for De Novo Review" arguing that the Magistrate Judge improperly denied his motion for declaratory judgment (Doc. 32 at 977–89); an objection to the Magistrate Judge's denial of Thompson's second motion for recusal of HOA defense counsel (Doc. 32 at 991–1001); and a "Rule 59 Motion to Amend" the Court's order adopting the findings and recommendation to grant Defendants' motion to strike

8

Thompson's complaint (Doc. 32 at 1003–67). The Court denied these motions. The Court dismissed Thompson's Second Amended Complaint with prejudice and entered judgment in favor of all Defendants. (Doc. 32 at 1069–80.)

Thompson appealed. (*Thompson I*, Doc. 287.) Thompson filed other numerous and often lengthy motions, including for an "Order directing Appellees to comply with FRAP 30(1.3)" (Doc. 32 at 1082–84); a "modification" of an order to reset due dates (Doc. 32 at 1086–88); leave to file supplemental excerpts of record (Doc. 32 at 1090–1267); appointment of pro bono counsel (Doc. 32 at 1269–1357); an order striking the appellee's opposition to appointment of pro bono counsel as untimely (Doc. 32 at 1359–63); "leave to make direct references to the lower court record" (Doc. 32 at 1365–69); "leave to file informal briefs to each answer brief" due to alleged "wide ranging misrepresentation" (Doc. 32 at 1371–88); and reconsideration of an order due to "opposing counsels' unethical behavior ris[ing] to the level of actionable criminal behavior" (Doc. 32 at 1390–96).

Apart from granting Thompson's requests to reset deadlines, the Ninth Circuit denied all of Thompson's motions. The Ninth Circuit affirmed the judgment in *Thompson I* on June 28, 2023. (Doc. 32 at 1398–1409.) Thompson filed additional motions for an extension of time to file a petition for rehearing (Doc. 32 at 1411–12); "stay of proceedings and bifurcation of rehearing matters (Doc. 32 at 1414–49); and for en banc review (Doc. 32 at 1451–1528). The Ninth Circuit denied these

motions. (Doc. 32 at 1530.) Thompson filed a petition for a writ of certiorari to the United States Supreme Court. (Doc. 32 at 1532–1607.) The petition was denied. (Doc. 32 at 1609.)

Thompson filed a second lawsuit on November 13, 2023, *Thompson v. U.S. Bank et al.*, Case No. 2:23-cv-00080-BMM, in the United States District Court – District of Montana ("*Thompson II*"). (Doc. 32 at 1611–39.) Thompson II repeated allegations regarding U.S. Bank's loan securing the Property, his application for a fixed-rate construction loan, and approval for a variable-rate loan. (Doc. 32 at 1620– 21.) Thompson alleged that U.S. Bank told him that "the interest rate was only variable during the construction period of the loan" and that principal and fixed-interest payments would begin "at the end of the construction period[.]" (*Id.*) U.S. Bank explained that Thompson could apply for and receive "as many extensions of time as he might need" for the construction period. (Doc. 32 at 1621.) Thompson informed U.S. Bank of his intention to build an in-law apartment in the Property's basement to contribute to the mortgage payments. (Doc. 32 at 1621–22.) Thompson alleged that Defendants improperly foreclosed on the Property and that Auction.com falsely advertised the Property's value. (Doc. 32 at 1628–29.)

Thompson filed numerous motions, including a motion requesting a temporary restraining order and preliminary injunction to prevent the trustee sale of the Property (Doc. 32 at 1641–97); a motion to recuse Judge Morris because Judge

Morris had dismissed *Thompson I* (Doc. 32 at 1699–1779); and a motion for leave to file a 304-paragraph amended complaint (Doc. 32 at 2252–356).  U.S. Bank moved to dismiss Thompson's complaint.  (Doc. 32 at 1784–2245.)  Thompson then filed an untimely amended complaint (Doc 32 at 2227–50) and filed without leave a first amended complaint (Doc. 32 at 2252–356).  U.S. Bank moved to strike.  (Doc. 32 at 2358–65.)  The Court dismissed Thompson's complaint, granted the motions to strike Thompson's amended complaints, and denied Thompson's motions.  (Doc. 32 at 2367–86.)  Thompson appealed.  (Doc. 32 at 2391–93.)

Thompson filed his Complaint in the instant case less than a month after the Court issued judgment in *Thompson II*.  (Doc. 1.)  Thompson then filed an Amended Complaint.  (Doc. 7.)  Thompson's Amended Complaint again alleges a conspiracy among Defendants connected to the purchase and development of the Property and similar factual allegations against U.S. Bank and other Defendants.  (*See generally*, Doc. 7.)

## II.    LEGAL STANDARD

A court accepts as true all facts alleged in the complaint when considering a motion to dismiss under Rule 12(b)(6) and draws inferences in the light most favorable to the non-moving party. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). The court need not accept as true, however, a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quotations omitted).

A court must dismiss a complaint under Rule 12(b)(6) if the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A court must liberally construe the pleadings when a plaintiff represents themself. *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016).

A court may take judicial notice of court filings and other matters of public record when considering a motion to dismiss. *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir.1998). A court's notice does not extend to disputed factual matters contained within those filings. *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1072 (S.D. Cal. 2021).

## III.  DISCUSSION

### A.  U.S. Bank's Motion to Dismiss

Thompson's Amended Complaint fails to state a claim for relief. "Under the doctrine of res judicata, a final judgment bars further litigation by the same parties

based on the same cause of action." *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992). The doctrine of res judicata deters "plaintiffs from splitting a single cause of action into more than one lawsuit." *Asarco LLC v. Atlantic Richfield Co.*, 369 P.3d 1019, 1023 (Mont. 2016). Thompson's Amended Complaint in this case seeks to relitigate the same facts and issues Thompson already has alleged in his two prior suits. The Court will dismiss Thompson's Amended Complaint.

The Court first must determine whether state or federal preclusion law applies. State law applies when a federal court determines the preclusive effect of a state court judgment and the effect of a judgment entered by a federal court sitting in diversity jurisdiction. *Dauven v. United State Bancorp*, 390 F. Supp. 3d 1262, 1276 (D. Or. 2019). Federal preclusion law applies when determining the preclusive effect of a judgment entered by a federal court exercising federal question jurisdiction. *Id.* Thompsons claims are precluded under both state and federal law.

## 1.    Federal law precludes Thompson's claims.

Federal claim preclusion bars subsequent litigation of "any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). In order for res judicata to apply there must be: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties. *W. Radio Servs. Co.*, 123 F.3d at 1192 (citing *Blonder–Tongue Lab. v. University of Ill. Found.*, 402 U.S. 313, 323–24 (1971)).

Thompson's Amended Complaint meets all elements.

The second and third elements are uncontested: *Thompson I* and *Thompson II* have reached a final judgment on the merits, and U.S. Bank and Thompson were parties to both prior actions. *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) ("involuntary dismissal generally acts as a judgment on the merits for the purposes of res judicata"). The Court must examine whether the cases share an identity. Whether the two suits involve the same claim or cause of action require analysis of four factors, which should not be applied "mechanistically:"

> (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

The issues in *Thompson I*, *Thompson II*, and the instant case arise from the same nucleus of facts: Thompson's purchase and development of the Property, the zoning dispute, and the loan obtained from U.S. Bank. Thompson alleges again in this case that U.S. Bank changed the loan's interest rate, did not permit him to receive extensions on the interest-only construction phase of the loan, and conspired with other Defendants to conceal the check image substantiating Thompson's zoning

allegations. This case relies on the "same overall harms and primary rights" as Thompson's previous two suits because all allegations and causes of action arise from Thompson's original dispute over the Property and his allegations that Defendants prevented him from constructing it and using it as he intended. *Mpoyo*, 430 F.3d at 987.

Thompson argues that the current action "pleads unfairness and extrinsic fraud in [*Thompson I* and *Thompson II*] which were decided in part on state court proceedings that the Plaintiffs have due process rights to bring independent actions against in federal court." (Doc. 75 at 3.) Thompson also argues that this case differs from *Thompson I* and *Thompson II* because it attempts to hold Defendant U.S. Bank's CEO, Andy Cecere, "personally liable" for the 2023 auction of the Property. (Doc. 75 at 3.) Andy Cecere has not been named as a Defendant in this action, however, and has not been personally served. (*See* Doc. 26-1 at 24.) Thompson's argument that this suit seeks to correct an "unfair" outcome in his prior two cases reveals Thompson's intent to circumvent the purpose of res judicata: "to relieve parties of the cost and vexation of multiple law suits, conserve judicial resources and, by preventing inconsistent decisions, encourage reliance on adjudication." *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 594 (9th Cir. 1985) (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)).

The fact that the Property's sale occurred after Thompson first sued U.S. Bank

in *Thompson I* does not create a separate factual basis for the claims.  The foreclosure sale occurred after Thompson brought his original action, but the underlying events, including the loan and default, occurred before *Thompson II*.  (Doc. 7, ¶ 245.) Thompson describes U.S. Bank's "role" in the conspiracy as "not producing requested documents, providing a loan with a variable rate instead of a fixed rate, and failing to allow construction extensions to break Thompson from his claims against US Bank's other clients\codefendants."  (Doc. 75 at 9.)  Thompson argues that the new allegations based on the 2023 auction of the Property represent the "culmination" of these events and U.S. Bank's "breach" of the construction loan agreement.  (*Id.*)  The basis for these allegations appears in *Thompson I* and *Thompson II*.  Thompson's argument concedes that the events alleged in this suit arise from his original allegations, not from a new cause of action or separate facts. Even if the foreclosure sale did constitute a separate cause of action, Thompson had the opportunity to litigate it in *Thompson II*.

Finally, Thompson's claims rely on substantially the same body of evidence. The claims, again, revolve around the Property, the loan from U.S. Bank, and the Property's zoning.  *Mpoyo*, 430 F.3d at 987.  This case involves the same claims as those already determined in *Thompson I* and *Thompson II*, and res judicata bars its adjudication under federal law.

16

### 2.    Montana law precludes Thompson's claims.

Montana law sets forth five elements that must be met under the doctrine of res judicata: (1) the parties or their privies must be the same in the first and second actions; (2) the subject matter of the actions must be the same; (3) the issues must be the same in both actions, or they must be issues that could have been raised in the first action, and they must relate to the same subject matter; (4) the capacities of the parties in both actions must be the same in reference to the subject matter and the issues raised in the actions; and (5) the first action must have ended with a final judgment on the merits. *Brilz v. Metropolitan General Ins. Co.*, 285 P.3d 494, 501 (Mont. 2012).

The parties to *Thompson I* and *Thompson II* are the same. The first element is met.  The actions also share subject matter.  Thompson alleges the same conspiracy among Defendants in connection to the zoning, purchase, construction, and default on the loan regarding the Property.  (*Compare* Doc. 7 *with* Doc. 32 at 33–302; Doc. 32 at 1611–39.)  Thompson alleges that Defendants conspired to prevent him from developing the Property according to his original plans, that the loan from U.S. Bank is void, and that the foreclosure sale is invalid.  (Doc. 7, ¶¶ 162, 237, 287.)  Similarly, the basis for all issues in all actions are the same, apart from the foreclosure of the Property, which could have been raised in *Thompson II*.  The Parties share the same capacity as in *Thompson I* and *Thompson II* because Thompson again brings this suit

against U.S. Bank in connection to the Property. This Court dismissed both *Thompson I* and *Thompson II* with prejudice and entered judgment in favor of U.S. Bank. Both suits resulted in a final judgment on the merits. Res judicata bars Thompson's claims under Montana law.

### B.    Thompson's Motions for Entry of Default

A federal court lacks jurisdiction over a defendant who has not received proper service of process. *Burnham v. Superior Ct. of California, Cnty. of Marin*, 495 U.S. 604, 608–09 (1990). A district court must "first assess the adequacy of service of process on the party against whom default is requested." *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 938 (D. Ariz. 2013) (citing *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir.1992)).

Thompson argues that the Court should disregard U.S. Bank's motion to dismiss. (Doc. 40.) Thompson asserts that U.S. Bank's "CEO and corporate entity" were served with summons and complaint on December 2, 2024, and, therefore, its motion to dismiss is untimely. (Doc. 40-1 at 1.) Thompson also moved for entry of default against U.S. Bank and other Defendants. (Doc. 45; Doc. 57; Doc. 59; Doc. 61; Doc. 63; Doc. 65; Doc. 67.) U.S. Bank responded that it had not been properly served. (Doc. 49.) The Court agrees that Thompson's certified mail receipt signed by a person named "Thug Tran" (doc. 29-1) does not effectuate proper service of process on U.S. Bank or its CEO. *Lande v. Billings Hospitality, Inc.*, 2008 WL

11346475 at *1 (D. Mont. Apr. 16, 2008) (personal delivery of a copy of the summons and complaint required for proper service of process under Federal Rule of Civil Procedure 4(h)). Thompson failed to serve U.S. Bank properly. Thompson cannot move for default on the basis that U.S. Bank's motion to dismiss is untimely.

### C.    Thompson's Motions to Certify Order for Appeal

Thompson moved this Court to certify its Order (Doc. 69) from March 21, 2025 as a final judgment. (Doc. 83.) Thompson also moved for certification under Rule 54(b) for interlocutory appeal of the Court's "de facto refusal to enter default under Fed. R. Civ. P. 55(a) against non-appearing defendants[.]" (Doc. 85.)

First, the Court's March 21, 2025 Order denied Thompson's motions for extension of time, random assignment, recusal, and to strike U. S. Bank's motion to dismiss. (Doc. 69.) The Court's Order did not constitute a final adjudication of any of Thompson's claims for relief. Certification for interlocutory appeal would be inappropriate. In any case, this Order dismisses Thompson's claims, and his motions to certify his case for appeal are moot.

### D.    Motion to Deem Thompson a Vexatious Litigant

Every citizen possesses a right to access the courts under the First Amendment to the United States Constitution. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Litigants may not abuse the judicial system, however, by filing numerous actions that prove frivolous or reflect a pattern of harassment. *De Long v. Hennessey*, 912

F.2d 1144, 1148 (9th Cir. 1990).  District courts possess the authority to stop abusive litigation by vexatious litigants by entering "pre-filing orders" that restrict the litigant's ability to file further lawsuits. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). Though the decision to impose a pre-filing order on a vexatious litigant rests within the sound discretion of a district court, "such pre-filing orders are an extreme remedy that should rarely be used." *Id.*

The district court must take the following steps to enter a pre-filing order: (1) give the litigant notice and opportunity to oppose the order before it is entered; (2) compile an adequate record for appellate review; (3) make substantive findings about the frivolous or harassing nature of the litigant's litigation history; and (4) tailor the order in a way that fits "the specific vice encountered." *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014).  The first two factors are procedural: the litigant must receive sufficient notice and opportunity to be heard and an adequate record must be created. *Molski*, 500 F.3d at 1057–58.  The second two factors are substantive: they enable the court to identify a vexatious litigant and curtail the litigant's harassing behavior without unduly burdening the litigant's access to the courts. *Id.* at 1058.

Thompson received notice and a fair opportunity to be heard.  In *Molski v. Evergreen Dynasty Corp.*, the Ninth Circuit discussed the factors for imposing a prefiling order on vexatious litigants. 500 F.3d 1047 (9th Cir. 2007). The Ninth

Circuit determined that Molski received full due process because the court's pre-filing order "was prompted by a motion filed by the defendants and served on Molski's counsel[,]" and Molski received an opportunity to be heard both in writing and at a hearing.  *Id.* at 1058–59.  Thompson received notice when U.S. Bank filed its motion to deem him a vexatious litigant, and the Court set a hearing on the issue. (Doc. 30; Doc. 31; Doc. 32; Doc. 47.)  Thompson moved for an extension of time to respond to U.S. Bank's motion.  (Doc. 37.)  Thompson did not respond to U.S. Bank's motion before the deadline or before the hearing on the motion took place. (Doc. 72.)  Thompson argued against the motion at the hearing, and Thompson requested and received an opportunity to respond to the motion in writing.  (Doc. 81 at 63–65, 68.)  The Court instructed Thompson to submit a response within 10 days after the hearing.  (Doc. 72.)  Thompson did so.  (Doc. 75.)  Thomspon's participation at the hearing and submission of a response brief satisfy due process and the first step for entering a pre-filing order.

The second factor requires courts to provide a "listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *Molski*, 500 F.3d at 1059.  The factual and procedural history discussed above provide an adequate record of Thompson's litigation history for review.  This Order further cites to the extensive documentation of Thompson's prior cases in this Court and the motions he filed in those cases included in the supplement to U.S.

Bank's motion. (Doc. 32.) The procedural steps of the analysis have been satisfied.

The third and main factor to be considered in the vexatious litigant analysis requires "substantive findings as to the frivolous or harassing nature of the litigant's actions." *Molski*, 500 F.3d at 1059. The court must examine both the number of filings and their content. *Id.* (citing *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990)). A complaint is frivolous when the claims are "clearly baseless," or based on "fanciful," "fantastical," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). Thompson brought two previous cases concerning the Property and an inordinate number of filings throughout the years Thompson has litigated these claims. (*See generally*, Doc. 32.)

Thompson's filings outline an increasingly broad conspiracy among Defendants, including the City of Bozeman, Montana, U.S. Bank and employees, the local HOA, law enforcement, attorneys, and others, to prevent Thompson from developing and occupying the Property and to infringe on Thompson's civil rights. (*See, e.g.*, Doc. 7; Doc. 32 at 33–302.) Thompson alleges that U.S. Bank and other Defendants defrauded Thompson regarding the terms of the loan he obtained for the construction phase of the Property and unlawfully foreclosed upon the Property. (Doc. 7.) Thompson admits, however, that he defaulted on the loan. (Doc. 7, ¶ 245.) Thompson's Amended Complaint relies on other unsupported allegations, including claims that a cohort of Bozeman's "hometown elite" conspired to rezone the

Property's subdivision in order to "skirt[] affordable housing and growth policy requirements." (Doc. 7, ¶¶ 100, 107.)  Thompson accuses U.S. Bank of conspiring with the City of Bozeman and the local HOA by "erasing" and "purg[ing]" all evidence of the Property's zoning and all documents showing a multiple-dwelling unit as the "basis" for the construction loan. (Doc. 7, ¶ 61.)  As U.S. Bank points out, U.S. Bank would not have conspired to prevent construction on the Property from being completed because the Property itself provided security for the loan. (Doc. 31 at 25.)

The Court previously has determined that Thompson's claims regarding the Property lack merit. (*Thompson I*; *Thompson II*.)  Thompson reiterates the same factual basis for those claims in this suit.  Thompson argues that this suit is not frivolous because the claims rely on events that occurred after his two previous cases and because the previous two cases were unfairly litigated. (Doc. 75 at 7.)  The fact that Thompson includes events related to the Property that occurred after *Thompson I* and *Thompson II*, such as the foreclosure auction of the Property, does not circumvent claim preclusion.  Thompson also argues that Cattail Creek Community Association's filing of an annual report constitutes an "abatable nuisance" and an act in furtherance of an identity theft enterprise because the Association was fraudulently created. (Doc. 75 at 7–8.)  The continued existence of the Cattail Creek Community Association, however, does not create a new cause of action simply

23

because the Association files an annual report or sends a routine mailing to its members.  Finally, Thompson's myriad filings, inappropriate interlocutory appeals, petitions, and other motions for various forms of relief strain the Court's resources and burden Defendants with duplicative responses.  Thompson meets the standard for harassing and frivolous litigation.

This case repackages Thompson's prior factual allegations within a far-reaching civil rights conspiracy, but his claims still arise from events connected to the Property's loan, zoning, and development.  Thompson continues to file numerous, repetitive, and lengthy motions attempting to litigate the same claims. The Court must act to prevent Thompson from continuing to file harassing and frivolous claims by entering a pre-filing order narrowly tailored to curtail Thompson's litigation related to the Property.  A pre-filing order is overbroad when it restricts a litigant from filing any case in a district court.  *Molski*, 500 F.3d at 1061. A pre-filing order, conversely, is narrowly tailored when it restricts only filings related to the specific vexatious claims and subjects the claims to an initial screening rather than imposing a complete bar to filing.  *Id.*  U.S. Bank's requested relief, a pre-filing order allowing the Court to review Thompson's filings and prevent him from relitigating issues connected to the Property, will appropriately restrain Thompson's harassing behavior without unduly limiting his access to the courts.

### III. CONCLUSION

The Court has determined that Thompson's Amended Complaint is barred by res judicata and therefore fails to state a plausible claim for relief under Rule 12 of the Federal Rules of Civil Procedure. Thompson cannot cure the deficiencies with any possible amendment. Thompson's case is dismissed with prejudice.

Further, Thompson's continuous, harassing, and frivolous filings require the Court's intervention. A pre-filing order allowing the Court to review Thompson's future filings related to the Property at issue in this case and his prior cases proves narrowly tailored to prevent further harassing filings by Thompson without unduly restricting his access to the courts.

Accordingly, it is HEREBY ORDERED:

1. Defendant U. S. Bank's Motion to Dismiss (Doc. 21) is **GRANTED**.

2. Thompson's claims are **DISMISSED** with prejudice.

3. Defendant U. S. Bank's Amended Motion to Deem Plaintiff Peter Thompson a Vexatious Litigant (Doc. 30) is **GRANTED**.

4. Thompson's Motion to Strike U. S. Bank's Untimely Motion to Dismiss (Doc. 40) and Thompson's Rule 55 Motions for Entry of Default (Doc. 45; Doc. 57; Doc. 59; Doc. 61; Doc. 63; Doc. 65; Doc. 67) are **DENIED**.

5. Thompson's Motion to Certify Doc. 69 Order for Appeal (Doc. 83) and Motion for Rule 54(b) Certification (Doc. 85) are **DENIED** as moot.

6. A pre-filing order shall be entered limiting Thompson's litigation activities

in this Court as follows:

 a. Thompson is barred from filing any further actions in this Court arising from or related to the facts and claims connected to Thompson's Property at 2988 Blackbird Drive in Bozeman, Montana.

 b. The Clerk of Court shall be informed that if Thompson attempts to file any further lawsuits with this Court, the Clerk of Court shall lodge Thompson's pleadings in a miscellaneous civil case entitled *In re Peter Thompson* until the Court determines whether the action should be allowed to proceed.

7. The Clerk of Court is directed to close this case.

DATED this 16th day of July 2025.

_____

Brian Morris, Chief District Judge
United States District Court

26